ETTIEN, APPELLANT, *v.* DRUM, RESPONDENT.

(No. 2,347.)

(Submitted January 17, 1907.  Decided February 2, 1907.)

(88 Pac. 659.)

*Claim and Delivery—New Trial—Verdict Contrary to Evidence*
*—Notice—Specifications—Appeal—Presumptions—Discretion.*

New Trial—Insufficiency of Evidence—Specifications—Statutes.
   1.  Under Chapter 92 of the Session Laws of 1905, page 185, amend-
ing sections 1152 and 1173 of the Code of Civil Procedure, it is no
longer necessary for a party to specify in his notice of intention to
move for a new trial the particulars in which the evidence is claimed
to be insufficient to justify the verdict.

Same—Notice—Presumptions—Appeal.
   2.  Where the district court passed upon a motion for a new trial, it
will be presumed, in the absence of a showing to the contrary by the
party alleging error in this regard, that it had a notice before it suffi-
cient to justify it in doing so.

Same—Insufficiency of Evidence—Discretion—Review.
   3.  A motion for a new trial on the ground that the evidence is in-
sufficient to justify the verdict is addressed to the sound legal discre-
tion of the trial court, and, in the absence of a showing that there
was a clear and unmistakable abuse of such discretion, its action in
granting it will not be disturbed.

*Appeal from District Court, Yellowstone County; Charles H.*
*Loud, Judge.*

ACTION by William Ettien against H. B. Drum.  From an or-
der granting a new trial to defendant, plaintiff appeals.  Af-
firmed.

*Mr. W. M. Johnston,* for Appellant.

There is no substantial conflict in the evidence in this case,
so, for all practical purposes, it should be treated by the court
as an agreed statement of facts.  For that reason the trial
court should not be considered as having any discretion in grant-
ing a motion for a new trial on the ground of the insufficiency

of the evidence. "Where there is no conflict in the evidence, there is presented a question of law, and the trial court acts upon it as upon an agreed statement of facts." (*Conklin* v. *Cullen,* 25 Mont. 217, 64 Pac. 502; *Emerson* v. *Eldorado Ditch Co.,* 18 Mont. 247, 44 Pac. 969. See, also, *Boe* v. *Lynch,* 20 Mont. 80, 49 Pac. 381; 1 Spelling on New Trial, sec. 243; *Kirby* v. *Higgins* (Mont.), 85 Pac. 275; *White* v. *Beal etc. Grocer Co.,* 65 Ark. 278, 45 S. W. 1060.)

When the court below grants a new trial on the ground that the verdict is against the evidence, the judgment will be reversed where it appears that the verdict is not contrary to the evidence. (*Cleckley* v. *Beall,* 37 Ga. 607.) "Where the evidence was sufficient to sustain the verdict and required such a verdict, an order setting it aside will be reversed as an abuse of discretion." (*Wendell* v. *North,* 26 Wis. 379.)

Where there is a vast preponderance of the evidence in favor of defendant and the defense is supported by numerous witnesses apparently entitled to credit, and the plaintiff's case stands upon his own evidence, either unsupported or slightly supported, a new trial should be granted by the general term. (*Kaare* v. *Troy S. & I. Co.,* 139 N. Y. 369, 34 N. E. 901.) Discretion of a trial court in granting a new trial for insufficiency of evidence will be overruled on appeal when there is not a scintilla of evidence to support any other verdict than that rendered. (*Ottomeyer* v. *Pritchett,* 178 Mo. 160, 77 S. W. 62.) Setting aside a verdict because excessive or because of insufficiency of the evidence, contemplates a judicial discretion, which may be corrected on appeal where justice imperatively demands interference. (*Lawrence* v. *Wilson,* 86 App. Div. 472, 83 N. Y. Supp. 821; 1904 B. Am. Dig., 263.) When the evidence greatly preponderates against the verdict, a motion for a new trial should be granted, and the refusal of the trial court to grant such motion was error. (*Southern Ry. Co.* v. *Lollar,* 135 Ala. 375, 33 South. 32. See, also, *Western & A. R. Co.* v. *Hunt,* 116 Ga. 448, 42 S. E. 785.) Where but one conclusion can be drawn from the evidence, the finding of the trial court may be set

aside. (*Nord* v. *Boston etc. Co.* (Mont.), 84 Pac. 1116.) Here, all of the evidence was in favor of the verdict and that there was no competent evidence against it. (See *Smith* v. *St. Paul etc. Ry. Co.*, 44 Minn. 17, 46 N. W. 149; *Wachlin* v. *Glencoe*, 41 Minn. 499, 43 N. W. 967.)

An order granting or refusing a new trial will not be disturbed, where there is a substantial conflict of evidence, unless an abuse of discretion is shown. (*Murray* v. *Heinze*, 17 Mont. 353, 42 Pac. 1057; *Chauvin* v. *Valiton*, 7 Mont. 581, 19 Pac. 215; *Beckstead* v. *Montana etc. Ry. Co.*, 19 Mont. 147, 47 Pac. 795; *Marshal's Admx.* v. *Valley Ry. Co.*, 97 Va. 653, 34 S. E. 455; Spelling on New Trial, p. 412; *Holland* v. *Huston*, 20 Mont. 84, 49 Pac. 390. See, also, *Lincoln* v. *Rodgers*, 1 Mont. 217; *Francisco* v. *Benepe*, 6 Mont. 245, 11 Pac. 637; *Mattock* v. *Goughnour*, 11 Mont. 274, 28 Pac. 301; *McCauley* v. *Tyler*, 11 Mont. 52, 27 Pac. 391; *Hamilton* v. *Nelson*, 22 Mont. 539, 57 Pac. 146; *O'Rourke* v. *Sherman*, 23 Mont. 310, 58 Pac. 810.)

*Mr. Fred. H. Hathhorn*, and *Mr. Harry A. Groves*, for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

This is an action of claim and delivery, wherein the plaintiff seeks to recover from defendant the possession of forty-two head of stock cattle, of the value of $33 each, two calves, of the value of $20 each, the increase of said stock cattle, number unknown, of the value of $20 each, and the sum of $200 as damages for wrongfully withholding said animals from the possession of the plaintiff, after demand. This is the second time the case has been before this court. (See *Ettien* v. *Drum*, 32 Mont. 311, 80 Pac. 369.)

In his complaint the plaintiff sets forth that on or about October 1, 1900, at Fergus county, Montana, William Deaton and Austin Warr unlawfully and wrongfully took said stock cattle from his possession, and that on or about December 11,

1900, the cattle came into possession of the defendant; that they have since increased in number; that defendant vented plaintiff's brand and placed his own brand on the cattle, and, upon demand, refused to deliver the animals to plaintiff. Defendant by answer alleges on information and belief that at the time he purchased the cattle from Deaton and Warr they were the owners and in possession of the cattle; that they sold and delivered the same to him for a good and valuable consideration.

By amended reply, plaintiff avers "that on July 24, 1900, one W. D. Deaton was the owner of all cattle in Montana which were branded with a pitchfork brand, so called, on the left shoulder; that on July 24, 1900, the said Deaton sold all of said cattle, together with said brand and the right to use the same, to this plaintiff at and for the agreed price of $33 per head; that at that time the said Deaton and this plaintiff entered into an oral agreement for the sale and delivery of said cattle, the terms of which agreement were as follows, to-wit: There were to be two deliveries of said cattle at Utica, Montana, and the first delivery was to be on or about August 5, 1900, and the second delivery on or about August 25, 1900; that said cattle when delivered should not be tally marked nor their brands vented, and all of said cattle were to be again turned on the common range after said second delivery; that the plaintiff was to pay $33 per head for said cattle when delivered and counted out at said two deliveries; and that plaintiff, upon said second delivery being made and paid for, should become the owner of said brand and of the right to use the same; that nothing was said by or between said Deaton and plaintiff at that time as to who would be the owner of any cattle branded as aforesaid which might be left on the range and not included in either of said deliveries."

Plaintiff further alleges that there was then, and ever since then has been, a well-known and general custom and usage among cattlemen in Fergus county, Montana, where said Deaton and plaintiff then resided and where said sale was made, as well as in the whole state of Montana, that under an agreement for the

sale of a whole herd of cattle and their brands, containing the same terms as to delivery, payment, brands, and all other conditions as are and were contained in said agreement between said Deaton and plaintiff, the purchaser of said cattle and brand becomes the owner of all said cattle, if any, left on the range and not included in any of the specified deliveries of said cattle, without the payment of any sum of money other than the agreed price per head for the cattle actually delivered; that plaintiff is informed and believes, and therefore alleges, that the said Deaton, because of his long experience as a cattleman, was then well informed as to said general custom and usage; and that said agreement was made because of said custom and usage, which was by tacit consent made a part of said agreement for the purchase and sale of said cattle.

"Plaintiff alleges that on or about August 5, 1900, the first delivery of said cattle was made at Utica, Montana, under said agreement, at which time six hundred and seven head of said cattle were counted out and delivered to plaintiff by said Deaton, and which were then paid for by plaintiff at the rate of $33 per head; that on or about August 6, 1900, said Deaton delivered to plaintiff a bill of sale of all of said pitchfork cattle, together with their said brand and the right to use the same; and that on or about September 1, 1900, said Deaton made the second and last delivery of said cattle, under said agreement, at Utica, Montana, at which time he delivered and counted out to plaintiff ninety-eight head of said pitchfork cattle, and plaintiff then paid to said Deaton the sum of $33 per head for the cattle so delivered.

"Plaintiff alleges that under said agreement and said custom and usage he, on September 1, 1900, became and was the owner of all of said cattle branded with the pitchfork brand on the left shoulder, together with said brand and the right to use the same, which said cattle included the cattle claimed by defendant and which are described in plaintiff's complaint and are involved in this action; that said Deaton at that time ceased to have any interest of any kind in or to any of said cattle; that said cat-

tle were then turned on the common range without being tally marked or without their brands being vented, and without any distinguishing mark whatever being put upon them or any or either of them, and that any pretended sale of said cattle, or any of them, by said Deaton or Austin Warr to the defendant was and is illegal and void.''

On the former appeal this court held that the custom of cattlemen above pleaded was inconsistent with section 4491 of the Civil Code, and could not, therefore, be relied upon by the plaintiff.

A composite review of the testimony on both sides of the case discloses: That in the summer of 1900 the plaintiff purchased of W. D. Deaton seven hundred and sixty head of stock cattle, more or less, and received a bill of sale therefor on August 7th of that year, which instrument is as follows:

''Know all men by these presents, that I, W. D. Deaton, of Fergus county, state of Montana, the party of the first part, for and in consideration of the sum of twenty-five thousand and eighty dollars, lawful money of the United States, to me in hand paid by Wm. Ettien, of Fergus county, state of Montana, the party of the second part, the receipt whereof is hereby acknowledged, do grant, bargain, sell and convey unto the said party of the second part, his heirs, executors, administrators and assigns, all of the following described property, to-wit: Seven hundred and sixty (760) head of stock cattle, branded with the pitchfork brand on the left shoulder. It is intended hereby to include and convey to the said party of the second part all cattle branded with the said brand and owned by the said party of the first part, and also to grant, sell and convey to the said party of the second part all right, title and interest in and to the said brand, to-wit, the pitchfork brand on the left shoulder and in and to the use thereof. To have and to hold the same, to the said party of the second part, his executors, administrators and assigns, forever; and I do, for myself, my heirs, executors and administrators, covenant and agree to and with the said

party of the second part, ——— executors, administrators and assigns, to warrant and defend the sale of the above-described property, against all and every person and persons whomsoever, lawfully claiming or to claim the same.

"In witness whereof, I hereunto set my hand and seal this 24th day of July, A. D. 1900.

"W. D. DEATON.   [Seal.]"

That six hundred and seven head of the cattle were delivered to plaintiff at his ranch by Deaton. That plaintiff did not rebrand the cattle or put any new marks upon them, but simply range-herded them. That some of the animals "tried to drift back to their home range all the time." Plaintiff testifies: "There would be a hundred head in a bunch of these cattle that were delivered to me by Mr. Deaton that would be going right back toward the old range." Other witnesses saw different animals so wandering back, and all the testimony shows that it was possible for the cattle to get back to their old ranges; they had been bought by Deaton from various ranchmen throughout the Judith basin. On September 1st a second delivery of ninety-eight head was made to plaintiff, and they were turned onto the same range with the ones first delivered. Nothing was done toward venting or rebranding the second delivery. Plaintiff then testifies: "Deaton said, at the time of the second delivery, that he could not find all of his cattle, and he wanted to know what I would do about it. I told him that I could not receive any more cattle under that contract without we both knew that they were cattle that I had not received before. I think he said something about thirty head being short. * * * I know practically nothing myself about these cattle not shipped at that time drifting back to their old range. I know nothing except what my men said, because I was not there." Plaintiff then described one "bobtailed" cow, branded "A4," that he afterward saw in defendant's herd. He also says he saw three others of these Deaton cattle there at the time. There is some testimony tending to show that Deaton attempted to make a third delivery of cattle to plaintiff, but that they were not received.

Defendant testified that he bought the animals in controversy from Deaton and Warr. He says they told him at the time of purchase that plaintiff refused to accept the cattle that they then had on sale. He then continued as follows: "After we went in to talk the matter over, the conversation in regard to the cattle was between Deaton and Warr in my presence, and, when they got through, then Warr and I talked over the matter of the pay for these cattle. Their principal conversation was in regard to the amount of cattle that had been bought, and then delivered from Deaton to Ettien, and what left, etc., of the remnant. They talked over between themselves as to how many they had actually delivered to Ettien; spoke of the delivery of the cattle; how many had been bought. Warr wanted to get an idea as to how many cattle had been bought and sold and was still on hand. They said something about the number that they had originally. They talked over the amount that had been bought that spring, and then they talked over the number that they had delivered to Ettien. They spoke of these deliveries that Deaton had made to Ettien. They said they had taken the cattle up to Ettien's, and, Ettien not being at home, that the foreman would not receive the cattle as Ettien was then in California. They did not mention any other reason why Ettien refused to receive them. They did not say anything about what had been done with the cattle that Ettien had received. I have no recollection of them saying what had been done with them after they had been turned over to him. There may have been a conversation to the effect that if Ettien was not satisfied that they would have the money for him when he returned, but I don't remember of it."

Warr testified that, in the summer of 1900, Deaton had purchased of various cattlemen seven hundred and seventy-one head of cattle, and, among others, two hundred and forty-six head from one P. E. Anderson. There is testimony that Deaton said he had found all of the Anderson cattle, and plaintiff testified that the four head identified by him in defendant's field bore the Anderson brand.

The cause was tried to a jury, and plaintiff had a verdict to the effect that he was entitled to recover of defendant forty-two head of cattle branded with the pitchfork brand. The jury fixed the value of the cattle at $33 each, which valuation was afterward, on plaintiff's motion, cut down to $30 each by the court, to conform to plaintiff's testimony. Judgment for plaintiff was entered in accordance with the amended verdict; whereupon defendant moved the court to vacate and set aside said verdict and grant a new trial, for reasons that will be hereafter considered. On April 30, 1906, the court granted said motion, from which order the plaintiff appealed to this court.

Defendant's specification of particulars in which the evidence is insufficient to support the verdict, as found in the transcript, is as follows:

"(1) There is absolutely no evidence tending to show that Deaton delivered any of the cattle in controversy herein to Wm. Ettien, the plaintiff herein, except one A4 cow. (Tr., pp. 6, 7, 9, 10, 12, 41.)

"(2) There is absolutely no evidence tending to show that H. B. Drum, the defendant herein, was not a purchaser in good faith of the cattle involved in this action subsequent to the transfer thereof from Deaton to Wm. Ettien, the plaintiff herein. (Tr., pp. 43-46.)"

Appellant contends that this specification of insufficiency did not warrant the district court in granting a new trial. It is no longer necessary under our practice to specify the *particulars* in which the evidence is insufficient to justify the verdict. The Ninth Legislative Assembly amended section 1152 of the Code of Civil Procedure by eliminating therefrom the following language: "And when the exception is to the verdict or decision, upon the ground of the insufficiency of the evidence to justify it, the objection must specify the particulars in which such evidence is alleged to be insufficient"—and in paragraph 3 of section 1173 they struck out the following words: "When the notice of the motion designates as the ground of the motion the insufficiency of the evidence to justify the verdict or other de-

cision, the statement shall specify the particulars in which such evidence is alleged to be insufficient.'' (Session Laws, 1905, pp. 185-187.)

Respondent contends in his brief that the trial court was bound to act upon the motion for a new trial, because his notice of intention to move for a new trial was based upon the insufficiency of the evidence. This notice of intention is not in the record, but it was not contended on the argument that the statement in the brief was incorrect. The trial court is presumed to have had a notice before it that would justify it in passing upon the motion for a new trial, and, in the absence of a showing to the contrary by appellant here, whose duty it is to make such showing if the facts warrant, this court will act upon such presumption.

Assuming, then, that the trial court was at liberty to act upon the motion for a new trial, did it abuse its discretion? Appellant argues that the record shows no substantial conflict in the evidence, and it should therefore be treated as an agreed statement of facts and passed upon as a question of law. He says: ''In this case there was no conflict in the evidence and no question as to the credibility of any witnesses.'' We cannot agree with this contention. In the case of *State* v. *Jones,* 32 Mont. 442, 80 Pac. 1095, the last utterance of this court on the subject granting new trials by the district court, is: ''A motion for a new trial is addressed to the sound legal discretion of the trial court; and the action of the latter will not be disturbed except in an instance manifesting a clear and unmistakable abuse of such discretion.'' It was for the trial court to say whether the evidence, in weight, justified the verdict. (*Harrington* v. *Butte etc. Min. Co.,* 27 Mont. 1, 69 Pac. 102.)

The order of the district court setting aside the verdict and granting a new trial is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.