ETTIEN, APPELLANT, v. DRUM, RESPONDENT.

(No. 2,584.)

(Submitted April 8, 1909.   Decided April 19, 1909.)

[101 Pac. 151.]

*Claim and Delivery—Live Stock—Sales—Contracts—Construction—Evidence—Instructions — Nonprejudicial Error—Hearsay Testimony.*

Live Stock—Sales—Contracts—Construction.
    1.   Evidence examined, in an action in claim and delivery to recover a number of cattle, alleged to belong to plaintiff by virtue of an oral contract of sale under which he became the owner of the brand and of all the cattle bearing it, whether actually delivered or not, and *held* to show the contract to have been that only such cattle as were actually delivered to plaintiff and paid for at the rate per head agreed upon should become his property.

Same—Instructions—Nonprejudicial Error.
    2.   Defendant claimed to have purchased the cattle in dispute from one D., who theretofore had sold to plaintiff the major portion of the herd with the brand, under the contract referred to in the foregoing paragraph.   The question before the jury was whether D. had sold to defendant cattle previously sold and delivered to plaintiff.   In an instruction the court defined the term "innocent purchaser," and plaintiff objected to the definition and suggested an amendment, which the court refused.   *Held,* that the question whether defendant was an innocent purchaser was not in the case, inasmuch as, if defendant bought cattle which belonged to plaintiff by actual purchase and delivery, the latter could recover irrespective of the good faith of defendant, and that therefore the refusal of the court to permit the amendment was not prejudicial error.

Same—Hearsay Testimony—Harmless Error.
    3.   The statements of a bank officer, who testified partly from personal knowledge as to transactions between the parties, partly from statements made to him by them, and partly from knowledge obtained by cashing checks covering the transactions, could not be said to have been strictly hearsay, and an order refusing to strike such testimony did not constitute reversible error, especially where from other evidence it appeared that plaintiff could not have suffered prejudice from the ruling.

Same—Verdict—Evidence—Sufficiency—Review.
    4.   Where the evidence in an action in claim and delivery was almost wholly circumstantial and in such a condition that the mind was left in doubt as to the justness of plaintiff's claim, upon whom was the burden of proof, a verdict in favor of defendant will not be disturbed on appeal under an assignment that it is not supported by the testimony.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

ACTION by William Ettien against H. B. Drum. Judgment for defendant, and from it and an order denying him a new trial, plaintiff appeals. Affirmed.

*Mr. W. M. Johnston,* for Appellant.

*Mr. Fred H. Hathhorn,* and *Mr. Harry A. Groves,* for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

This cause has been four times tried and twice heretofore appealed. (See *Ettien* v. *Drum,* 32 Mont. 311, 80 Pac. 369; also, 35 Mont. 81, 88 Pac. 659.) The result of the last trial was that defendant had a verdict and judgment, and plaintiff appeals from the judgment and from an order denying a new trial. For a statement of the facts reference is made to the opinion rendered upon the last appeal. Three contentions are now advanced: (1) That the court erred in not striking out certain testimony of the witness Warr; (2) that the court erred in defining an innocent purchaser; (3) that the verdict is not sustained by the evidence. We shall first consider the second specification.

1. Let it be recalled that Ettien claims to have purchased of Deaton all of the "pitchfork" brand cattle, and that forty-two head of said cattle were afterward sold by Deaton to Drum. These are the cattle in controversy. The plaintiff's amended reply alleges "that the plaintiff was to pay $33 per head for said cattle when delivered and counted out at said two deliveries." Plaintiff testified: "On the fifth day of August six hundred and seven head were delivered. I paid for these cattle at the rate of $33 per head. There were ninety-eight cattle in the second delivery. I paid for them. Under the terms of this contract, I was to pay $33 per head for every animal delivered to me. I understood that whatever cattle were not delivered to me on the 25th of August, the date of the second delivery, were then my property. Under the terms of the contract, I was to be the owner of fifty-five undelivered

cattle, without paying any money for them if there were any undelivered. I didn't know that there were any left at all. There was not to be any contingency in our contract. He was to gather and deliver all the cattle at Utica. If they were not all delivered, I understood I was the owner of them without paying the $33 per head for them. At the time I purchased the cattle and closed this deal, I knew nothing about the number of 'pitchfork' cattle Deaton owned, except what they told me. I bought the entire band with two deliveries. I paid about $3 a head more than the cattle were worth, expecting to find a few not delivered in the length of time he agreed to deliver in. Deaton was at Utica when the second delivery was made in September, 1900. At that time Deaton said he was short thirty head of these cattle, and didn't know what he was going to do about it. I told him I couldn't receive any more under that contract without we both knew that they were cattle that had not been delivered before. I would have received any cattle I knew I hadn't received before. If I were satisfied of that, Deaton could make a delivery of the balance in a third delivery. That is what I told him." Austin Warr testified for the defendant, and plaintiff denied having had a great part of the conversation which Warr said took place between plaintiff, himself, and Deaton; but these statements of Warr's he did not deny, viz.: "Nothing whatever was said by Deaton to Ettien at the time of the sale as to who should be the owner of any cattle that were not delivered to Ettien by Deaton. Ettien was to pay Deaton $33 per head by the head delivered. The sale of the herd in its entirety was not mentioned. Some time after the sale of the cattle, in a conversation I had with Mr. Ettien in regard to his refusal to take the remainder of the cattle when Deaton took them to Utica to deliver them, Ettien told me that he considered the cattle to be his, and that at the time Deaton agreed to turn over the 'pitchfork' brand he, Ettien, figured that Deaton would not be able to gather and turn over all of the cattle at the times fixed for the two deliveries, and that he, Ettien, would get the extra cattle that much cheaper." Deaton testified: "Ettien was to pay me $33 per head for the cattle

when I counted them out and delivered them at Lewistown. I delivered seven hundred and five head of cattle and was paid for them. I was not paid for any cattle except those I delivered."

We quote the testimony of these two witnesses on the part of the defendant to show that they substantially corroborate the plaintiff as to what the contract was. Warr also testified, without contradiction, that the two receipts. given by plaintiff to Deaton "stated the price to be $33 per head." The bill of sale of the cattle, signed by Deaton and delivered to Ettien by Warr, recited: "That I, W. D. Deaton, * * * for and in consideration of the sum of $25,080, * * * do sell to [Ettien] * * * seven hundred and sixty head of stock cattle branded [pitchfork] on left shoulder. It is intended hereby to include and convey * * * all cattle branded with said brand and owned by said [Deaton] and also to * * * sell * * * to said [Ettien] all right, title, and interest in and to the said [pitchfork] brand and in and to the use thereof." The purchase price of seven hundred and sixty cattle at $33 per head would amount to $25,080; but we have no hesitancy in holding from plaintiff's own testimony that the contract was that only such cattle as were actually delivered to him and paid for at the rate agreed upon should become his property. The bill of sale, viewed in the light of their actions, was not the contract between them. It is admitted that plaintiff never paid the full amount of $25,080, but only seven hundred and five times $33, or $23,265. It is true that plaintiff testified, and also told Warr, that he expected to get all cattle not actually delivered for nothing, but he does not incorporate any such understanding in any agreement which he claims to have had with Deaton; and his evidence that he would have been willing to receive cattle after the second delivery, providing he was satisfied that he had not previously received the same animals, seems inconsistent with what he now claims to have been his understanding of the contract. If plaintiff was, by virtue of the bill of sale, to become the owner of all cattle not actually delivered, and Deaton had seven hundred and sixty cattle, which the evidence

tends to show that he did, then it would seem to follow that plaintiff would be liable for the balance of the purchase price over and above $23,265. But such was not the contract. The contract was as heretofore stated, and all parties seem to have so understood it. This being the case, no question should have arisen at the trial as to whether or not Drum was an innocent purchaser. If defendant bought from Deaton any of the cattle which belonged to Ettien by actual purchase and delivery, then plaintiff could recover those cattle in this action, or their value, however innocent Drum may have been in the transaction of purchase.

The court at the request of the defendant gave the jury this instruction: "You are instructed that the transfer of personal property, such as cattle, is conclusively presumed, if made by a person having at the time the possession or control of the property, and, if not accompanied by an immediate delivery and followed by an actual and continued change of possession of the property transferred, to be fraudulent and therefore void, as against the purchaser in good faith, subsequent to the transfer; so that in this case plaintiff can only recover cattle actually delivered to him by Deaton, unless the defendant Drum was not a purchaser in good faith. The term 'good faith' means one who buys honestly for a valuable consideration, and without notice of the rights of other parties." To this requested instruction plaintiff made the following objection: "Plaintiff objects to defendant's offered instruction 3, for the reason that the definition of an innocent purchaser contained therein should have added, 'or without such notice as would put a reasonably prudent man on his inquiry, which inquiry, if followed up, would inform him of the prior sale of the property in question.' " If the plaintiff had objected to the giving of any instruction on the subject, we are not prepared to say that his position would not have been well taken; but the additional matter which he sought to have incorporated therein could not have aided the jury in determining the real issue in the case, which was: Did Deaton sell to Drum any of the cattle previously sold and delivered to Ettien?

2. The witness Warr gave his evidence by deposition. On direct examination he testified that Deaton bought seven hundred and seventy-one head of cattle of various persons in the spring and summer of 1900; that he bought two hundred and forty-six of these of one Anderson. On cross-examination he said: "I know of my own personal knowledge that Deaton purchased seven hundred and seventy-one head as stated in my direct examination. He may have purchased others, but I know of no others. As to my knowledge of the cattle purchased, it was obtained in part by seeing the cattle, by cashing Deaton's checks given in payment thereof, by statements made by Deaton, corroborated by the statements made by those from whom he purchased the cattle. I know that Deaton purchased from Anderson during the spring of 1900 a band of cattle said to number two hundred and forty-six head, and I know that Deaton paid Anderson for two hundred and forty-six head of cattle, my knowledge being obtained from statements made by Anderson, and further by the payment of the checks given to Anderson in payment of the cattle." Warr was an officer of the Bank of Fergus County. Appellant moved to strike out the testimony that Deaton purchased two hundred and forty-six cattle from Anderson because the same was hearsay. The court denied the motion to strike, and appellant assigns error. We doubt whether this testimony was strictly hearsay. Warr exhibited some personal knowledge, and the whole matter was more a subject for argument to the jury than ruling by the court. Moreover, in view of other testimony in the case, we do not think that plaintiff suffered any prejudice from the ruling.

3. It is insisted that the cause should be reversed for the reason that the verdict is not supported by the testimony. We have given this assignment serious consideration, and conclude that we ought not to disturb the judgment of the court below. As to one particular animal the testimony seems to us to preponderate in favor of the plaintiff, and there may be serious question as to a few others; but on the whole the evidence is in such condition, being almost wholly circumstantial, as to leave the mind in doubt whether Drum ever received from

Deaton any of the same cattle previously delivered to Ettien The burden was upon plaintiff to prove that he did. We cannot say the verdict in its entirety is not supported by substantial testimony, and the judgment and order of the district court of Yellowstone county are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.