NORRIS v. LANCASTER et al.    (No. 579–4398.) *

(Commission of Appeals of Texas, Section B. Feb. 17, 1926.)

**1. Evidence ☞317(10)—Testimony of vegetable shipper's superintendent as to condition of shipment held admissible, although based partly on records.**

In action for damage to shipment of vegetables, testimony of shipper's superintendent as to condition of vegetables which he had inspected at time of shipment *held* admissible, though he did not remember particular car and referred to records of shipment, not offered in evidence, some of which were not made by him; evidence being admissible where predicated both on personal knowledge and hearsay.

**2. Assignments ☞134.**

Assignee to maintain action for damaged shipment of vegetables must make actual proof of assignment; Rev. St. 1911, arts. 588, 1906, being inapplicable.

**3. Acknowledgment ☞54—Assignment of action for damaged shipment of vegetables, signed by shipper's president, and certified by notary, held, admissible (Vernon's Sayles' Ann. Civ. St. 1914, art. 3697).**

Instrument of president of shipper corporation, assigning action for damage to vegetables in transit, duly acknowledged, attested with corporation seal and certified by notary, *held* admissible in action by assignee against carrier, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3697, relative to admissibility of declarations taken by notaries.

**4. Carriers ☞76—President of dissolved corporation, owning shipment of vegetables, could sue for damage in transit, though it was consigned to shipper (Vernon's Sayles' Ann. Civ. St. 1914, art. 1206).**

Though vegetable shipper consigned shipment to itself, notify another corporation, president of such corporation, after dissolution thereof, as trustee for creditors and stockholders, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1206, could bring action for damage in transit, regardless of assignment of cause of action by shipper, because such corporation was real owner.

**5. Carriers ☞135.**

In suit for damage to shipment of vegetables, interest *held* to be element of damage.

**6. Carriers ⬥135—Right to interest as item of damages for injured shipment of vegetables held waived by failure to ask instruction thereon.**

Where, in action for damage to shipment of vegetables, court, in charging jury as to damages, omitted item of interest, plaintiff *held* to have waived right to such interest by failing to request correction of instruction.

**7. Trial ⬥340(5)—Trial court could not change amount of damages found by jury by adding item of interest.**

Where, in action for injury to shipment of vegetables, court failed to charge jury that they could consider item of interest in awarding damages, it could not change finding of jury so as to include such item.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by T. D. Norris, Jr., trustee, against J. L. Lancaster and another, receivers of the Texas & Pacific Railway Company, and others. Judgment for the plaintiff was by the Court of Civil Appeals affirmed in part and reversed in part (271 S. W. 401), and plaintiff brings error. Reversed, and judgment of district court reformed and affirmed.

C. A. Wright, of Fort Worth, for plaintiff in error.

Thompson, Barwise & Wharton, Fred L. Wallace, Lee, Lomax & Wren, and George Thompson, all of Fort Worth, and R. S. Shapard, of Dallas, for defendants in error.

SPEER, J. The California Vegetable Union, a corporation, shipped a carload of vegetables from Nadeau, Cal., consigned to itself, notify Norris-Mitchell Company, wholesale dealers in such commodities, to Fort Worth, Tex. The car was moved over the lines of the Atchison, Topeka & Santa Fé Railway Company, the Panhandle & Santa Fé Railway, Company, and the Texas & Pacific Railway Company. This suit was instituted in the district court of Tarrant county by T. D. Norris as trustee against all the railway companies to recover damages for injuries to the vegetables en route. The plaintiff pleaded an assignment of the cause of action by the California Vegetable Union; likewise he pleaded the dissolution of the Norris-Mitchell Company, a corporation, alleging that he was the president and sole manager of such concern, upon which grounds he predicated his right to recover.

There was a trial before a jury, resulting in a verdict and judgment for the plaintiff against the receivers of the Texas & Pacific Railway Company, and in favor of the other defendants. Upon appeal by the receivers, the Court of Civil Appeals reversed the plaintiff's judgment as to the Texas & Pacific Railway Company, and likewise reversed the judgment in favor of the initial carrier, but affirmed the judgment in favor of the Panhandle & Santa Fé Railway Company, 271 S. W. 401. The plaintiff, Norris, alone presented an application for writ of error.

[1] The Court of Civil Appeals reversed the judgment of the district court because of the admission of the testimony through depositions of the witness C. L. Fisher with respect to the condition of the vegetables when delivered to the initial carrier at Nadeau. The objection sustained to such testimony was that the same was hearsay; that is, that it appeared from the witness' testimony his answers were based upon records not kept by himself. The witness testified that the vegetables were all sound, in good condition, and of good quality when loaded into the car. If this testimony was hearsay, it was certainly very important, for there is a great dearth of other evidence to show that the vegetables were in good condition when delivered to the initial carrier, or otherwise to show negligence of the defendant in error. The undisputed fact that the vegetables were in very bad condition when finally delivered at destination accentuates the importance of the court's ruling. In answer to cross-interrogatories, the witness testified:

"It is true, is it not, Mr. Fisher, that you do not at this time have any personal recollection of having inspected this particular car, but that your testimony is based entirely upon an affidavit that you made before L. G. Fleisher on September 20, 1920? Answer: It is true that at this time I have no personal recollection of having inspected this particular car; my testimony is not based on affidavit by me on September 20, 1920, before L. G. Fleisher, but on my records and knowledge generally of the character of vegetables handled, packed, and shipped.

"In testifying in answer to any of the direct interrogatories, have you consulted any records by you or by any one else? If so, then please state which interrogatories you answered after consulting such records, and state when and by whom such records were made, and attach the originals of all such records to your deposition. If you decline to attach the originals of such records, then please state why you decline, and attach true copies thereof, causing the notary to mark same for identification. Answer: I consulted my records in answering all of the direct interrogatories with the exceptions of Nos. 1, 2, and 4. These records were made by parties who were working under me at the time. The original records are in the general office of the California Vegetable Union, copies of them are attached hereto, for identification, and marked Exhibit A, B, C, D, E, and F."

The Court of Civil Appeals, upon these answers, thought that the witness' testimony was but the reproduction of the records of such shipment, and that the records themselves therefore would constitute the best evidence of their contents. We think this holding was error. This witness testified:

"I am superintendent of the California Vegetable Union of Los Angeles, Cal. On April 5, 1920, I was employed by the California Vegetable Union in the capacity of superintendent at their Nadeau packing house. On April 5, 1920, there was loaded at the Nadeau, Cal., packing house of the California Vegetable Union car SFRD9710 with vegetables, which was consigned to California Vegetable Union, advise Norris-Mitchell Company, Fort Worth, Tex. I inspected the cauliflower, lettuce, carrots, rhubarb, and celery that made up this consignment, and supervised the loading of the car. * * * In my capacity as superintendent of the packing plant at Nadeau of the California Vegetable Union it was my duty to receive, inspect, and superintend the packing and loading of all vegetables into this car. * * * Those vegetables were all sound, in good condition and of good quality when loaded into the car. The cauliflower was fresh and with green jackets, lettuce was firm to fairly firm, was crisp and green; carrots were medium size, well trimmed, sound, and of good quality; rhubarb was of No. 1 quality, and in sound, fresh condition; celery was northern celery from Sacramento river district of California, was crisp, well bleached, and fresh, sound, and in good condition. * * * Bunkers in the car were practically filled with ice when it was spotted for loading on April 5."

The bill of exceptions taken to the court's action in overruling the receivers' objections shows that this witness further testified:

"At the time I examined these vegetables, they were in field crates with tops off. This was the original examination. I subsequently examined them during the process of packing in the regular shipping crates. The above applied to all the commodities except the celery, which was crated when it was received from the north at Nadeau. My examination of the celery was in the original containers. * * * The cauliflower was loaded the same day it was received in the packing house, as was also the lettuce, rhubarb, and celery. The carrots were received in the packing house April 2, 1920, which was three days before they were loaded into the car for shipment."

The trial court correctly admitted the testimony, for the same was not clearly wholly hearsay. The rule undoubtedly is that, where it appears a witness' testimony is predicated both upon personal knowledge and upon hearsay, his testimony is admissible. Being as to matters within the knowledge of the witness, his answers should not be excluded merely because he likewise has received the same information from others under circumstances to make it hearsay, if that were his only means of knowledge. To exclude testimony upon the ground of hearsay, it must affirmatively appear that such testimony is wholly hearsay, and that the witness is not speaking as to matters otherwise within his own knowledge. The most that can be said of the witness' answers to cross-interrogatories is that it may be inferred therefrom that the witness was merely reproducing records made by others. This,

however, does not clearly appear, though the inquiry were limited to such answers. He merely testified that in answering direct interrogatories he consulted records made by parties who were working under him at the time. This does not necessarily mean that his source of knowledge was limited to such consultation. It is true he said that he did not at the time of giving his testimony have any personal recollection of having inspected *this particular car* (italics ours). Even this is not controlling, since the witness might fairly testify from a consideration of all the facts within his knowledge that the vegetables loaded into this car were in sound condition, even though he had no personal recollection of having inspected the particular car. But, when all the testimony of the witness is considered, it is perfectly apparent he meant to testify and did testify that he had made a personal examination of all the vegetables prior to their being put into the car, and that, when he testified those loaded into the car were in good condition, he meant to state and did state the result of his personal inspection of the vegetables. At least, the jury would have the right to draw this conclusion from his testimony. It could not be certain, as matter of law, that his testimony was based wholly on the records referred to.

Another consideration which should aid in supporting the trial court's ruling is that the records which appear to have been attached to the answers of the witness were not themselves offered in evidence, and it is a mere speculation, therefore, that, if they had been offered, they would have tended to sustain the objection rather than the court's ruling.

The pith of our holding may be summarized in this brief excerpt from M. P. Ry. Co. v. Sherwood, 19 S. W. 455, 84 Tex. 125, 17 L. R. A. 643:

"The cross-examiner did not sufficiently probe the sources of the witness' knowledge to justify us in holding that it was founded entirely on hearsay, rendering his testimony inadmissible."

See, also, Atlanta, etc., Co. v. McManus, 58 S. E. 258, 1 Ga. App. 302; Ettien v. Drum, 101 P. 151, 39 Mont. 34; Dowd v. McGinnity, 152 N. W. 524, 30 N. D. 308.

The Court of Civil Appeals did not decide the other questions presented, but intimated its opinion upon some of them. In view of our reversal of its judgment, we have examined the other questions relied upon by appellant in that court, and find no merit in any of them, except as hereinafter stated.

[2, 3] It is no doubt true that, where an assignee sues, he must prove the assignment vesting title to the cause of action in him. And, since the suit in the present case was not instituted upon any written instrument, we agree with the Court of Civil Ap-

peals' intimation that articles 588 and 1906 of our Revised Statutes are not applicable, and that actual proof by plaintiff of the assignment is necessary, if plaintiff in error's right to maintain the suit depends upon an assignment. We are of the opinion the instrument of assignment purporting to be the act of the California Vegetable Union, a corporation, through its president, duly acknowledged, attested with the corporation seal, and certified by a notary public in due form, whereby the cause of action, if any existed in the corporation, was assigned to plaintiff in error, was properly admitted in evidence as against the objections made, as coming within article 3697, Vernon's Sayles' Texas Civil Statutes, declaring:

"All declarations * * * and acknowledgments taken, by notaries public, * * * shall be received as evidence of the facts therein stated in all the courts of this state."

[4] But the right of plaintiff in error to maintain this suit does not in any wise depend upon an assignment from California Vegetable Union. It is true the shipment by the vegetable union was consigned to itself, notify Norris-Mitchell Company, yet the undisputed facts are that it was a purchase by the Norris-Mitchell Company, and that the consignment was a form only, presumably for the convenience of the parties to expedite payment or something of the kind, and that in truth, whatever loss there was in the shipment on account of the facts alleged in the petition as constituting a cause of action, would belong and did belong, to Norris-Mitchell Company, and the produce was actually delivered to that company upon the written order of the California Vegetable Union. The local agent for the vegetable union makes certain that the purchase price of the car was paid directly to the California Vegetable Union, and that he was authorized to make the delivery order above referred to. The ownership of the cause of action herein asserted was therefore not a seriously contested issue, but was at most only technically involved, and unquestionably Norris-Mitchell Company was the real owner. By force of the terms of article 1206, Vernon's Sayles' Texas Civil Statutes, upon the dissolution of the Norris-Mitchell Company, plaintiff in error, as its president and sole manager, became a trustee for the creditors and stockholders of such corporation, with full power to maintain this suit. This would cure any possible error in the admission in evidence of the assignment.

[5-7] The Court of Civil Appeals, upon its reversal, suggested that the trial court had erred in adding interest to the amount of damages found by the jury, and to think this suggestion is well made. The issue of damages was submitted, and the jury was instructed that:

"In arriving at and determining the amount of such damages, if any you allow, you will determine what would have been the reasonable market value of said shipment in Fort Worth, Tex., at the time of their arrival, if same had been transported and delivered at said point within the usual and customary time and had been handled in an ordinarily careful and prudent manner, and deduct from said amount whatever you may find was the reasonable market value at Fort Worth, and the highest price for which said shipment of vegetables could have been sold at the time and in the condition in which they were actually delivered. Write the difference, if any, between said amounts, as your answer to this question."

If the plaintiff was entitled to have the jury to consider in addition the item of interest on such difference (and he was), he should have requested such correction of the instruction, but, having failed to do so, he has waived it. The issue of damages was thus submitted, and the finding of the jury is conclusive. The trial court has no power to ignore or to materially change the finding. St. Louis, etc., Ry. Co. v. Seale (Tex. Com. App.) 267 S. W. 676.

The most recent expression upon this question is contained in the opinion of Mr. Justice Pierson in Ewing v. William L. Foley, Inc. (decided February 10, 1926).[1] In that case, which was one of special issues, the amount of certain alleged lost profits was submitted to the jury, but the issue was so framed as to exclude interest as an element of damage, and the opinion sustains the right of the trial judge in such a case to include interest in the judgment rendered upon such finding of damages; whereas, in this case, it will be seen the court has in effect instructed the jury that the legal measure of damages is the difference in the value of the shipment with and without the negligence complained of. Strictly speaking, this was not the legal measure of plaintiff's damage, but under our statute it stands approved in the absence of objections thereto in the respect that it did not authorize a finding of interest on such difference. In the case last cited, the Supreme Court expressly approves the cases of St. Louis, etc., Ry. Co. v. Seale, supra, and Southern, etc., Co. v. Adams (Tex. Com. App.) 227 S. W. 945, which it follows, basing its approval upon the fact that in both cases, "the court definitely and fully instructed the jury as to the measure of damages, in effect excluding any other damages," and, there being no objection to the charge or tender of a special charge correcting the omission of interest, the trial court was without power to include interest in the judgment.

We find no error that would require a reversal of the trial court's judgment. We therefore recommend that the judgment of the Court of Civil Appeals, reversing and remanding the cause, be reversed, that the judgment of the trial court be reformed

---

[1] 280 S. W. 499.

with respect to the item of interest heretofore referred to, and that, as thus reformed, the judgment of the trial court be affirmed. The costs of the Court of Civil Appeals will be taxed against plaintiff in error, since the error as to interest was complained of in that court, but plaintiff in error will recover all other costs expended.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court reformed and affirmed, as recommended by the Commission of Appeals.