## M. B. DOWD v. L. A. McGINNITY.

(152 N. W. 524.)

Action for damages for assault and battery. Plaintiff had judgment for $6,550 and interest. Defendant appeals.

Assault and battery — action for damages — depositions — objections to certain questions therein — time of making.

1. Certain questions asked of one Dr. Judd, whose testimony had been taken up by deposition, were objected to when such deposition was offered in evidence. The better practice is to offer the objection at the time the witness gives the testimony. In this case, it is difficult to tell from the record what part of the doctor's testimony was in evidence at the time the objections were taken, and it is therefore difficult to review the trial court's rulings. No error, however, appears from the record which we have before us.

---

Note.—The holding of the court to the effect that a witness who is not an expert will not be permitted to testify to the mental condition of a person unless it is shown that the witness has had an opportunity for observation, and that he is in possession of such information as will enable him to form an intelligent opinion, is in accord with the authorities as shown in the notes in 38 L.R.A. 721; 19 Am. Rep. 410; and 30 Am. St. Rep. 38.

The authorities on the question of the right of an expert witness to testify to the mental or physical condition of a person, based upon his observation or examination, are presented in the note in 39 L.R.A. 308.

**Medical expert testimony — opinion evidence — based upon the testimony of another witness whom he had heard — assumption of truth.**

2. Dr. LaBarge was asked for an opinion based upon the testimony of another witness whom he had heard testify. After objection that the truth of such doctor's testimony was not assumed, the trial court said: The Court: "That is, assuming that the evidence given by such and such witnesses are true. Overruled, I will let him answer." This ruling was heard by the witness and became part of the original question. Later, the trial court struck out the doctor's testimony relative to this matter. If there was any error, the same was thereby cured.

**Defendant on stand — questioned as to having been arrested and convicted for same offense — error — motion to strike out.**

3. While the defendant was upon the stand, and being cross-examined, he was asked whether or not he had been arrested and convicted in a criminal action for assault and battery relative to those same facts. The objection was overruled, and witness replied that he had been. Later, the trial court stated that he would entertain a motion to strike out such testimony, and upon motion of the defendant the same was stricken out and the jury admonished to disregard the same. This cured any error.

**Plaintiff's mental condition — witness questioned as to — competency of witness — must be shown.**

4. One Reiser, witness for defendant, was asked certain questions relative to plaintiff's mental condition. Same were properly excluded because the witness had not shown himself competent to testify.

**Evidence of mental condition — competency of witness.**

5. Defendant's witness Hankey failed to show sufficient foundation for his testimony as to plaintiff's mental condition, and the questions quoted in the opinion were properly excluded.

**Witness — must be acquainted with conditions.**

6. The court struck out the testimony given by defendant's witness Spangerud, relative to plaintiff's mental condition, after the witness had admitted that he had not observed plaintiff's condition.

**Questions — improper — unfair.**

7. The question asked of defendant's witness Rock was properly excluded, being unfair.

**Doctor's evidence as to mental condition — personal examination — facts — not hearsay.**

8. Dr. Stobey gave testimony relative to plaintiff's mental and physical condition. *Held*, that the doctor's opinion was based upon his personal examination, and not upon statements made to him by the plaintiff; and therefore was not hearsay.

**Witness — signature — ability to sign.**

    9. One of defendant's witnesses was asked as to plaintiff's ability to sign his name in the spring of 1911. Witness had not observed plaintiff sufficiently to testify as to his mental condition, and if the question was asked for any other purpose it was immaterial.

**Verdict — evidence — sufficient to sustain.**

    10. Evidence examined, and *held*, sufficient to sustain the verdict in the sum found by the jury.

**New trial — motion for — affidavits — denial.**

    11. A motion for a new trial based upon the affidavit of a witness, who turned away as soon as she realized there was going to be a fight, was properly denied by the trial court.

Opinion filed April 5, 1915.

Appeal from the District Court of Williams County, *Crawford,* J. Affirmed.

*E. R. Sinkler,* for appellant.

Where the erroneous and incompetent evidence is grossly prejudicial, its withdrawal by the court, after having been received over objection, does *not cure* the error. Wojtylak v. Kansas & T. Coal Co. 188 Mo. 260, 87 S. W. 506; Manzer v. Phillips, 139 Mich. 61, 102 N. W. 292; Roydan v. Heberstumpf, 129 Mich. 137, 88 N. W. 386.

And where the evidence so admitted creates such a strong impression on the minds of the jury that its subsequent withdrawal will not remove effect caused by its admission, the original objection may be available on motion for new trial, or on appeal. Tourtelotte v. Brown, 4 Colo. App. 377, 36 Pac. 73; Taylor v. Adams, 58 Mich. 187, 24 N. W. 864; Glascock v. Chicago & A. R. Co. 69 Mo. 589; Meyer v. Lewis, 43 Mo. App. 417; Cobb v. Griffith & A. S. G. & Transp. Co. 12 Mo. App. 130; Mueller v. Weitz, 56 Mo. App. 36; Nelson v. Spears, 16 Mont. 351, 40 Pac. 786; Wisconsin State Bank v. Dutton, 11 Wis. 372.

The question, "is a person in the condition that the testimony of Doctor Stabey shows, and in the condition. as shown by your own observation, in a condition to perform mental and physical labor, is not a proper hypothetical question, and is wholly incompetent, and does not assume the truth of the testimony of the witness mentioned, and does not seek the opinion of the witness on the stand, upon any

specific state of facts: That it invades the province of the jury. Re Barber's Appeal, 63 Conn. 393, 22 L.R.A. 90, 27 Atl. 973; Louisville, N. A. & C. R. Co. v. Falvey, 104 Ind. 409, 3 N. E. 389, 4 N. E. 908; Stoddard v. Winchester, 157 Mass. 567, 32 N. E. 948; Elliott v. Russell, 92 Ind. 526; Chicago, R. I. & P. R. Co. v. Moffitt, 75 Ill. 524; Burns v. Barenfield, 84 Ind. 43; McCarthy v. Boston Duck Co. 165 Mass. 165, 42 N. E. 568; Getchell v. Hill, 21 Minn. 464; State v. Lautenschlager, 22 Minn. 514; Jones v. Chicago, St. P. M. & O. R. Co. 43 Minn. 279, 45 N. W. 444; Carpenter v. Blake, 2 Lans. 206; Link v. Sheldon, 136 N. Y. 1, 32 N. E. 696; Armendaiz v. Stillman, 67 Tex. 458, 3 S. W. 678; Luning v. State, 2 Pinney (Wis.) 215, 52 Am. Dec. 153; Henry v. Hall, 13 Ill. App. 343; Rush v. Megee, 36 Ind. 69; Woodbury v. Obear, 7 Gray, 467; Reynolds v. Robinson, 64 N. Y. 589; Hagadorn v. Connecticut Mut. Ins. Co. 22 Hun, 249; Gregory v. New York, L. E. & W. R. Co. 55 Hun, 303, 8 N. Y. Supp. 525; Re Snelling, 136 N. Y. 515, 32 N. E. 1006; Gottlieb v. Hartman, 3 Colo. 53; Elgin, A. & S. Traction Co. v. Wilson, 217 Ill. 47, 75 N. E. 436, 19 Am. Neg. Rep. 145; Keyes-Marshall Bros. Livery Co. v. St. Louis & H. R. Co. 105 Mo. App. 556, 80 S. W. 53; Bedford Belt R. Co. v. Palmer, 16 Ind. App. 17, 44 N. E. 686; Crozier v. Minneapolis Street R. Co. 106 Minn. 77, 118 N. W. 256; Williams v. State, 64 Md. 384, 1 Atl. 887, 5 Am. Crim. Rep. 512; People v. Millard, 53 Mich. 63, 18 N. W. 562; State v. Scott, 41 Minn. 365, 43 N. W. 62; People v. McElvaine, 121 N. Y. 250, 18 Am. St. Rep. 820, 24 N. E. 465; State v. Coleman, 20 S. C. 441; Bennett v. State, 57 Wis. 69, 46 Am. Rep. 26, 14 N. W. 912; People v. Vanderhoof, 71 Mich. 158, 39 N. W. 28; People v. Aikin, 66 Mich. 460, 11 Am. St. Rep. 512, 33 N. W. 828, 7 Am. Crim. Rep. 345; State v. Maier, 36 W. Va. 757, 15 S. E. 991; 1 Wigmore, Ev. § 681.

The testimony of the other witnesses to which reference is made in such a question *must be assumed to be true*. Bennett v. State, 57 Wis. 69, 46 Am. Rep. 26, 14 N. W. 918; People v. Lake, 12 N. Y. 362; People v. Aikin, 66 Mich. 460, 11 Am. St. Rep. 512, 33 N. W. 828, 7 Am. Crim. Rep. 345; Porter v. State, 135 Ala. 51, 33 So. 695; Gunter v. State, 83 Ala. 96, 3 So. 605; Page v. State, 61 Ala. 16; People v. McElvaine, 121 N. Y. 250, 18 Am. St. Rep. 820, 24 N. E. 465; Reynolds v. Robinson, 64 N. Y. 595; Guiterman v. Liverpool,

N. Y. & P. S. S. Co. 83 N. Y. 358; Luning v. State, 2 Pinney (Wis.) 215, 52 Am. Dec. 154; People v. Millard, 53 Mich. 63, 18 N. W. 562; French v. Wilkinson, 93 Mich. 322, 53 N. W. 530, 1 Am. Neg. Cas. 146.

The court erred in permitting evidence to be offered that defendant had been arrested and convicted of crime, and striking it out later on did not cure the error. Caverno v. Jones, 61 N. H. 623.

Where it is asserted that a person is simulating mental incompetency, the wildest latitude will be allowed in establishing facts that will disprove such state or condition. Nash v. Hunt, 116 Mass. 237; McCoy v. Jordan, 184 Mass. 575, 69 N. E. 358; Hewitt v. John Week Lumber Co. 77 Wis. 548, 46 N. W. 822.

A nonexpert witness cannot testify as to any apparent change in the intelligence or mutual capacity of the person being investigated. Clark v. Clark, 168 Mass. 523, 47 N. E. 510; Bridge v. Oshkosh, 71 Wis. 363, 37 N. W. 409.

A physician cannot testify to what his patient told him as to his *past condition* or symptoms. This does not relate to a *present state of facts.* Such evidence is incompetent and highly prejudicial. State v. Dart, 29 Conn. 153, 76 Am. Dec. 596; Rowland v. Philadelphia, W. & B. R. Co. 63 Conn. 415, 28 Atl. 102; People v. Foglesong, 116 Mich. 556, 74 N. W. 733; Bacon v. Charlton, 7 Cush. 586; Grand Rapids & I. R. Co. v. Huntley, 38 Mich. 543, 31 Am. Rep. 321; Lacas v. Detroit City R. Co. 92 Mich. 412, 52 N. W. 745; Johnson v. McKee, 27 Mich. 473; Bennett v. Northern P. Co. 2 N. D. 127, 13 L.R.A. 465, 49 N. W. 408.

A new trial will be granted on newly discovered evidence, even though such evidence is cumulative. Hart v. Brainerd, 68 Conn. 50, 35 Atl. 776; Anderson v. State, 43 Conn. 514, 21 Am. Rep. 669; Keet v. Mason, 167 Mass. 154, 45 N. E. 81; Preston v. Otey, 88 Va. 491, 14 S. E. 68; Ellis v. Ginsburg, 163 Mass. 143, 39 N. E. 800; Kochel v. Bartlett, 88 Ind. 237; Mercer v. King, 19 Ky. L. Rep. 781, 42 S. W. 106; State v. Stowe, 3 Wash. 206, 14 L.R.A. 609, 28 Pac. 337; Smythe v. State, 17 Tex. App. 244.

Positive and uncontradicted testimony, not inherently improbable, is prima facie evidence of the fact which it seeks to establish, and, as against a mere suspicion of its falsity, justifies a directed verdict, since

the jury are not at liberty to disregard the testimony. Brown v. Petersen, 25 App. D. C. 359, 4 Ann. Cas. 980; Crane v. Morris, 6 Pet. 598, 8 L. ed. 514; United States v. Wiggins, 14 Pet. 334, 10 L. ed. 481; Quock Ting v. United States, 140 U. S. 417, 35 L. ed. 501, 11 Sup. Ct. Rep. 733, 851; Kelly v. Burroughs, 102 N. Y. 93, 6 N. E. 109; Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102.

*Cowan & Adamson* and *H. S. Blood,* for respondent.

Doctor LeBarge qualified as a medical expert. He had heard all of Doctor Stabey's testimony. He had known plaintiff well prior to the injury. He was asked to state, from all of the testimony including that of Doctor Stabey, and from his own observations, if a complete recovery was probable. Such testimony was competent. Walters v. Rock, 18 N. D. 45, 115 N. W. 511.

Plaintiff's questions to the arrest and conviction of defendent on a charge of assault and battery were not properly objected to, to avail defendant here. The general objection is of no avail. First Nat. Bank v. Warner, 17 N. D. 76, 114 N. W. 1085, 17 Ann. Cas. 213; Kolka v. Jones, 6 N. D. 461, 66 Am. St. Rep. 615, 71 N. W. 558.

The questions were proper, in any event. Blackburn v. Minter, 22 Ala. 613.

If such evidence was improperly admitted, it did not prejudice the defendant, as it would operate in mitigation of damages if it had any effect at all. Sometimes in such cases the defendant himself seeks to show conviction, sentence, and the imposition of a fine in mitigation of damages. Phillips v. Kelly, 29 Ala. 628; Bundy v. Maginess, 76 Cal. 532, 18 Pac. 668; Reddin v. Gates, 52 Iowa, 210, 2 N. W. 1079; Corwin v. Walton, 18 Mo. 71, 59 Am. Dec. 285; Wolff v. Cohen, 8 Rich. L. 144; Hoadley v. Watson, 45 Vt. 289, 12 Am. Rep. 197; Smithwick v. Ward, 52 N. C. (7 Jones, L.) 64; Jackson v. Wells, 13 Tex. Civ. App. 275, 35 S. W. 528.

A nonexpert witness may testify as to observations made by him of a person's mental or physical condition, without first relating the facts upon which his opinion is based. State v. Barry, 11 N. D. 441, 92 N. W. 809; Moore v. Spier, 80 Ala. 129; Atkins v. State, 119 Tenn. 458, 13 L.R.A.(N.S.) 1031, 105 S. W. 353; Ryder v. State, 38 L.R.A. 721, and brief, 100 Ga. 528, 62 Am. St. Rep. 334, 28 S. E.

246; Auld v. Cathro, 20 N. D. 461, 32 L.R.A.(N.S.) 71, 128 N. W. 1025, Ann. Cas. 1913A, 90.

BURKE, J. This is an action for damages alleged to have been sustained by reason of an assault and battery. Plaintiff recovered judgment in lower court for $6,550 damages, with interest. Defendant appeals, assigning thirty-four errors of law relating to the admission and rejection of testimony; that the evidence is insufficient to justify the verdict, and the further grounds that the court erred in refusing to allow him a new trial upon showing of newly discovered evidence. He has grouped his assignments under eleven points in his brief, and we will discuss the same in the order selected by him.

(1) In support of the damages alleged to have been sustained, plaintiff offered in evidence the deposition of a Dr. Judd, of Rochester, Minnesota, who testified that he had examined the records of St. Mary's Hospital at that place to refresh his memory, and that the same showed that Mr. Dowd had a systolic cardiac murmur. When the deposition was read, the objection was made that the doctor had not testified from his own recollection independently, nor after refreshing his memory so that he was able thereafter to testify of his own knowledge, and that therefore the testimony was based entirely upon the written records of the hospital which may have been made by other persons. It is difficult to tell from the printed abstract, whether or not such was admissible. The objections to the deposition as a whole were not made in writing and filed prior to the trial as provided in § 7906, Comp. Laws 1913, but were made orally at the time such deposition was offered in evidence and to specific questions. This is a very unsatisfactory procedure, and leaves this court in doubt as to the state of the evidence when the rulings were made.

This is the entire record:

Q. Did you, on or about the 16th day of June, 1910, examine M. B. Down concerning injuries to his head? (Objection overruled.)

A. I think I examined him about this time. I feel pretty sure I did.

Q. Are these records kept in your hospitals concerning the date and facts in reference to such an examination? (Objection overruled.)

A. They are.

Q. Consulting those to refresh your memory, I ask you to state what condition you found Mr. Dowd to be in, in reference to injuries to his head and skull, if you found any such injuries or evidence thereof? (Objection overruled.)

A. The record shows that M. B. Dowd was examined on the 6-16-10.

Mr. Sinker. Move to strike out the answer on the same grounds set forth in the objection.

The Court. Strike out the answer.

A. (continued) Aside from the subjective murmur, he had a systolic cardiac murmur. (Objection.)

The Court. I think the court will let it go in.

Mr. LeSueur. We ask leave of the court, in view of the objection, to be allowed to read that portion of the answer showing the result of the X-ray examination, leaving out the balance of the answer.

The Court. We can't split it up.

This is all of the record concerning Dr. Judd's testimony that is presented to us in the settled statement of the case. Instead of making the objection at the time the doctor was being examined, thus allowing the plaintiff to supply any inadvertent omissions, such objection was offered at a time when the correction could not possibly be made. We are unable to see any prejudicial error in this incident.

(2) Dr. LeBarge was called as a witness for plaintiff, and was asked this question: "Q. Is a person in the condition that the testimony shows—that the testimony of Dr. Stobey shows, and in the condition as shown by your own observation—in a condition to perform mental and physical labor?" This question was objected to on the ground that it was not a proper question, based upon the opinion of another witness without assuming the truth thereof. The Court. "That is, assuming that the evidence given by such and such witnesses are true. Overruled,—I will let him answer." And it further appears that after cross-examination and the doctor had testified that he differed with Mr. Stobey as to the result of the injury, the court struck out his evidence and cautioned the jury as follows: "The court instructs you that when the evidence he gave is stricken out, it is not to be considered." It is doubtful whether any error occurred in the admissions of the testimony in the first place, but if there were

it was cured by the later ruling and the cautionary instructions to the jury. Appellant has devoted many pages of his brief to the conceded proposition that a witness may not give his opinion based on the testimony of other witnesses, without assuming such testimony to be true. In view of the fact that, in this instance, the court only admitted the testimony upon the assumption, as stated by him and heard by the doctor, that such evidence was true, such authorities become immaterial. Other questions to which objections were made, were not answered by the witness, and no error therefore can be predicated. Again, Dr. LaBarge was asked to state from all of the testimony, including that of Dr. .Stobey, and from his own observation, if a complete recovery of the plaintiff was probable, and he answered: "Not probable." This question and answer occurred after the statement of the trial court that he would only admit such testimony if it assumed the truth of the previous testimony, and was likewise stricken out by the court after cross-examination of the witness. Respondent relies upon Walters v. Rock, 18 N. D. 45, 115 N. W. 511, to show that the question was proper because the testimony of Mr. Stobey was not disputed. The question is also treated in Kerstein v. Great Northern R. Co. 28 N. D. 3, 147 N. W. 787. In view of all of the facts it is apparent that no reversible error can be predicated upon this ruling.

(3) While the defendant was upon the stand in his own behalf, and being cross-examined by plaintiff's attorney, he was asked whether or not he had been arrested and convicted in a criminal action for assault and battery relative to those same facts. This testimony was admitted over objection, and defendant replied that he had been. The objection was that the evidence was incompetent, irrelevant, and immaterial. This did not point out to the trial court the particulars in which the question was considered objectionable. Whether or not this alone would justify the trial court in overruling the same, we need not discuss. For a correct statement of this rule, see the recent case of Huston v. Johnston, 29 N. D. 546, 151 N. W. 774, but in this particular instance the abstract shows that later in the trial the court said: "The court thinks it admitted some evidence that was improper, yesterday, in regard to permitting the defendant to answer questions in regard to whether he was convicted of assault, and I will entertain a motion to strike it out at this time." (Motion to strike made by the

defendant.) "Let the record show that the motion is granted. Gentlemen of the jury, this court sustained a motion to strike out the evidence in connection with the conviction of the defendant for assault and battery connected with this same transaction. In considering the evidence in this case, you mustn't consider that in your deliberations." If any error existed and the objection was properly raised, such error was cured.

(4) One Reiser, a witness for defendant, testified that he had called upon plaintiff shortly after the alleged assault and had talked with him at that time. Certain questions were asked him in an attempt to show that in witness's opinion plaintiff at that time talked rationally. In State v. Barry, 11 N. D. 428, 92 N. W. 809, at page 441 of the state report it is said: "The rule is well established, and applies to civil as well as to criminal cases, that upon an issue of insanity, the layman when called as a witness may be required to give an opinion. But in such cases there must be laid a foundation upon which the opinion called for is to rest for support. The preliminary examination must develop sufficient facts to show the competency of the witness; i. e. sufficient to show that he is in a position to give an opinion which will possess at least some value as testimony. The foundation facts must furnish a rational ground for the opinion." We have examined the record carefully upon this phase of the case, and have reached the conclusion that those questions were excluded by the trial court upon the grounds of incompetency of the witness to testify. The same kind of questions were allowed when the witnesses qualified themselves, showing that the rule was well understood by the court. For instance, the same witness was asked: "Q. Did anything occur at that time? Did he at that time speak in a slow tone of voice or as he ordinarily did?" Objected to as incompetent, no foundation laid, calling for a conclusion and leading. Overruled. "Q. And was there any difference between this talk at this time when you were in the hotel there, and talk you had with him before?" Objected to as calling for a conclusion of the witness, no proper foundation laid for it. Overruled." It appears from the record that defendant was allowed to examine the witness in full as to everything that occurred, and to give all the conversations had with the plaintiff, and if the witness was not allowed to state whether or not in his opinion such conversation was rational, it

was upon the ground of incompetency only. Upon this phase, the witness states: "I talked to him just a few minutes. He talked all right for a little while. . . . I think it was the same summer of the trouble—though I would not swear to it. . . . I think I saw him once just prior to the injury, to know him, that was all. I would not swear I had talked three times, or more or less, to him." The witness also testified as follows: "Q. Then he got excited and rattled in his speech? A. Not for a while. He didn't talk just the same all the time. He apparently forgot what he was going to say. He turned to his wife. He says: 'What was that I was going to say?' That was the second occasion I met him." We do not think defendant has any cause for complaint upon this assignment. The examination was full and complete, and there was ample reason for excluding the three questions.

(5) One Hankey testified for the defendant to the effect that he had known plaintiff and talked with him in the spring of 1911. He was asked several questions tending to show that the plaintiff's mental condition was better than claimed at the trial, and as a sample we set forth the following: "Q. Was his manner yesterday while he was in the court room any different from his manner when he was transacting this business with you?" Objected to as "improper comparison, irrelevant, and immaterial." The record shows that the witness had one talk with the plaintiff about half an hour in the spring of 1911, and that this was the only conversation he had had with him, and there is no showing that he made any observation of plaintiff at that time. It is thus evident that he was not in a position to draw a comparison between his conduct on that occasion and at the trial. The question is obviously unfair. As stated in the preceding paragraph, the foundation laid for an opinion of this kind must be thorough. There is no error in said rulings.

(6) One Spangerud was called as a witness for the defendant, and testified that he did not notice any difference in plaintiff's actions or talk since the 26th of May, 1910, the date of the alleged assault. This was stricken out, after the cross-examination of the witness had elicited the following admission: "I have never paid any attention to Mr. Dowd's speech—I couldn't honestly say that I had observed it," the trial court did perfectly right in striking out the opinion previously given.

(7) One Rock was a witness for defendant. He testified that he had known plaintiff since May, 1911, and went to his home in the spring of 1911 to rent some land, and that he had an opportunity to notice plaintiff's appearance, demeanor, and manner of talk. He was then asked this question: "Q. Was his appearance, demeanor, and manner of talk yesterday on the witness stand different from his appearance, demeanor, and manner of talk at the time you met him in the spring of 1911?" To this the objection was made that it was improper comparison, and no foundation laid; therefore, incompetent. The objection was sustained, and properly so. Witness had not shown any particular observation of the plaintiff at that time, and the question was so framed that the slightest difference in those respects, would allow an answer "yes" to be interposed. The question was unfair and was properly excluded.

(8) One Mr. Stobey, a witness for the plaintiff, as an expert was asked this question: "Q. From an examination of the plaintiff since the injury, are you able to state in what nervous condition you found him? A. Well, he can't sleep without having all kinds of hallucinations, dreaming all kinds of things, when he did sleep; and complains of pains at different regions." Defendant moved to strike out this answer as hearsay, and to strike out the words, "complains of pains in different regions," as not being part of the res gestœ. The motion was denied. It is argued that the answer of the witness must, of necessity, be based upon what was told to him by the patient, and therefore hearsay. The record, however, does not bear out this contention. The doctor had treated plaintiff immediately after his injuries and off and on from that time until the trial. He states over and over again that his testimony is based upon his personal examination. For instance, he says: "The result of the examination was that I found plaintiff in practically the same condition, nervous as before. . . . At the time I was treating plaintiff, I made an examination of his skull. I found an injury over the left eye; about an inch from the central orbit I found a depression, and I found it would be likely to cause the neurasthenic condition. This neurasthenic condition is a probable result of such an injury. . . . In my examination of Mr. Dowd, I noticed a deformity of the nasal bones. It was a fracture of the nasal bones." The very question to which objection was taken begins with

the words, "from an examination of the plaintiff, . . ." It is thus apparent that the doctor's testimony was based, partially at least, upon his personal examination of plaintiff's physical condition, and possibly he was able from such an examination to state positively that plaintiff's nervous system was in such a condition that dreams must of necessity come and hallucinations torment him. The objection that it is based upon hearsay is without merit.

(9) One of the witnesses for defendant was asked whether or not the plaintiff was able to sign his name to a mortgage in the spring of 1911. The witness had testified as follows: "I don't know as I ever had any conversation with him at all before the 26th of May, 1910. I just knew the man when I met him,—passed the time of day." There being no foundation laid for an opinion, the witness was clearly incompetent to testify upon the subject of insanity, and otherwise the testimony was immaterial. The objections were properly sustained.

(10) Under this heading, defendant insists that the evidence in the case is insufficient to justify the verdict, and that in any event the verdict is excessive. We have examined the evidence with care, and have reached the conclusion that it is sufficient to support a verdict, and that the verdict is not excesive. We will, as briefly as possible, set forth a few quotations from the testimony of the various witnesses which go to support this conclusion. Plaintiff used fourteen, and the defendant twenty-one, witnesses. It is impossible, of course, to give extracts from all of their testimonies. It is apparent that some hard feelings existed between the plaintiff and defendant prior to the assault, and there is evidence that upon one occasion defendant invited plaintiff to come off from his (plaintiff's) land to fight, and that plaintiff declined, whereupon defendant remarked that he would catch him off of the place sometime, and, "pound the hell out of you." Upon the 26th of May, 1910, defendant and plaintiff met in one of the side streets of the vilage of Tioga. Plaintiff testifies that he did not see the defendant at all, and has no recollection of the assault. Defendant testifies that plaintiff was the aggressor. One Furstenow was a witness to the assault, and testifies as follows: "The first I saw was Mr. McGinnity apparently laying his coat on some packages that were on the ground,—he had just let go of it, and Dowd was standing possibly a rod or two southeast of him towards the depot. Dowd was facing

towards me, and McGinnity had his back towards me. Just as Mc-Ginnity dropped his coat, he went—started to run towards Mr. Dowd. Dowd at the same time raised up his arms to his face, and Mr. Mc-Ginnity got to him and hit him and knocked him down. , . . And after he knocked him down, Mr. Dowd fell on his side and rolled over on his face, and Mr. McGinnity took hold of his neck and chucked his face into the street several times, then rolled him over on to his back. After he rolled him over on to his back, he took hold of his neck, or clothing somewhere about the neck, and raised him high enough so his head hung from the ground a few inches, possibly 4 or 5, and hit him in the face again. Then he let him down easy, and at that time Dr. Stobey came around the corner, and McGinnity faced him, and that was all that was done. . . . The street along there was apparently a very hard street. I think there are stones there. I did not see Dowd strike McGinnity or offer to strike him. He did not strike McGinnity at any time. I was watching the case. He made no effort to strike McGinnity. . . . When I first saw Dowd, he was facing the northwest, apparently doing nothing. McGinnity was stooping over in the act of dropping a coat. He was in a partially stooping position. When he went towards Dowd, he ran. Dowd backed up, put his hands above his face. When McGinnity came up to him, he struck him in the face. He knocked him down the first blow. Dowd apparently tried to protect his face from the blow at the time that Mc-Ginnity struck him. He had his arms across his face. . . . Dowd was trying to back up; backing up. He did not advance towards McGinnity at all. I was in a position where I could see the parties plainly. There was no obstruction to my view. . . . I think McGinnity is a larger man than Dowd. I know that by contrast. When McGinnity struck Dowd down with the first blow, he did not try to throw the blow aside with his hands, just simply stood there and took it. Only he had his hands raised up. I saw he made no effort whatever to attempt to parry the blow. I know he held his hands. Simply held them still. He did not move them in either one way or the other, in order to avoid any blows that were being struck, . . . Dowd did not have his coat off. . . . McGinnity picked up his coat and put it on—took his packages and left. And Dr. Stobey called to Mr. Nesseth. They picked up Mr. Dowd and

30 N. D.—21.

took him to Dr. Stobey's office." Dr. Stobey testified that they took plaintiff to his office and examined him. Found several cuts and bruises. A cut on the lip, about a quarter of an inch deep, clear through the upper lip, a broken nose, and an injury to the skull over the left eye where there was a depression. He testifies that plaintiff remained unconscious about an hour, and was unable to leave the hotel for about ten days, and that later he went to Rochester, Minnesota, for treatment. Also that the witness had treated him for about a year after the injury. He testifies: "I noticed a difference physically and mentally in the condition of Mr. Dowd after the injury. The difference I noticed was that he could not talk coherently for any length of time, or probably for any time. He had a tendency to cry when you talked to him a while, and considerable worry it seems on his mind. Complains of pains in his head at times, and those things; 'Do not feel strong,' he says. . . . Ever since the injury he could not talk coherently. . . . I mean by the word 'coherently,' asking a certain question, and not answering the question. Probably talking about some other subject altogether. . . . I have made an examination of the plaintiff since the injury to ascertain his nervous condition. The result of the examination was that I found plaintiff in practically the same condition, nervous as before. I mean that there has been practically no change in his nervous condition since the injury. . . . Any injury to the brain would be likely to cause the condition, and that is one of the usual causes. . . . I found an injury over the left eye about an inch from the central orbit. I found a depression. I found it would be likely to cause the neurasthenic condition. This neurasthenic condition is a probable result of such an injury. I noticed a deformity of the nasal bones. It was a fracture of the nasal bones. . . . The patient did not have a full appreciation and memory of things that were transpiring around him. He was not the same after that . . . as he was before. He did not do any work. That is, he was not working while I was out there. He refused to talk, lots of times. Simply would not say a word, and that was apparently one of those abnormal periods." Dr. LeBarge also examined the plaintiff, and testifies: "His manner, mental and physical condition, were first class prior to the injury. Since the injury I have met him a few times at Williston. Have met

him quite recently. I have noticed a change in the condition of plaintiff before and after this injury. . . . I have deduced that there was a lack of memory and an impediment in his speach, and a staring look, with pupils of both eyes widely dilated, and a general emaciation of the whole muscular system, and impediment in his walk,—unsteadiness in his walk. The conditions continue up to the present time. I have not formed any opinion as to whether or not he will ever completely recover from it." Dr. Windell made an examination of the plaintiff under the direction of the court, and testified: "I' found a man apparently in a weak physical condition, with a marked impediment in his speech, a tendency to reach a stage of excitement with very little provocation, crying at the least attempt to cross him in anything, with an unequality of the pupils as I remember at the time, and symptoms very distinct of some disordered condition of the brain. . . ."

Other witnesses testified to plaintiff's mental condition, and fully corroborate the conclusion announced by the doctors. Moreover, plaintiff was witness at the trial, and it is apparent from his cross-examination that he was either suffering from some mental disorder or was an extraordinary simulator. The attorney for defendant abandoned the cross-examination under circumstances which leave the impression that he (said attorney) believed the witness mentally unsound. Anyhow, the question was one for the jury, who saw all of the witnesses, including plaintiff, upon the stand, and were in a better position to judge of the injury than are we. We believe there was sufficient evidence, not only to carry the case to the jury, but to support the amount found by them.

(11) The last assignment of error relates to the refusal of the trial court to allow a new trial for newly discovered evidence. This newly discovered evidence was presented in the form of an affidavit of one Nora Van Waggennen, who deposes that on the 26th of May, 1910, she saw the two parties, and that Dowd first spoke to McGinnity, and that both parties talked a little, and that Dowd used words in an angry manner towards McGinnity and then appeared to be about to attack McGinnity; and that, realizing there was to be a fight, she looked the other way so she would not see it. We do not believe the testimony was material enough to justify a new trial. She saw nothing after

McGinnity dropped his coat. True, her testimony had a tendency to show Dowd the aggressor, but it will be remembered that the jury found no punitive, only actual, damage, and the verdict can be supported regardless of who was the aggressor. The showing of diligence is likewise very weak. The trial court had wide discretion in such matters, and will not be reversed excepting for abuse. The judgment of the trial court is in all things affirmed.

BRUCE, J. (specially concurring). I concur in the result of the foregoing opinion. However, I merely concur in the conclusions reached in ¶¶ 3 and 8 of the syllabus, because I believe that a fair trial was had and that no real prejudice arose from the rulings. As far as ¶ 3 is concerned I believe that the trial court erred, and that the subsequent instruction could not have cured the error if it had in fact been prejudicial. This evidence, however, shows conclusively that the defendant was the real aggressor in the assault before us, and I am satisfied that the jury must and would have found this to have been the fact outside of any prior verdict or conviction.